# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ROWAN COURT SUBDIVISION 2013**
**LIMITED PARTNERSHIP, ET AL.**
                              **CIVIL ACTION**

**VERSUS**
                              **NO. 15-870-JWD-RLB**

**THE LOUISIANA HOUSING**
**COPORATION, ET AL.**

## RULING AND ORDER

This matter is before the Court on the Federal Defendants' Motion to Dismiss (Doc. 21) filed by the United States Department of Housing and Urban Development ("HUD") and the United States Department of the Treasury ("Treasury") (collectively, the "Federal Defendants"). Plaintiffs Rowan Court Subdivision 2013 Limited Partnership ("Rowan") and John Does 1-60 (the "John Doe Plaintiffs") (collectively, the "Plaintiffs") oppose the motion. (Doc. 30.)  Oral argument was held on August 9, 2016.

Having carefully considered the law, facts in the record, and arguments of the parties, the Federal Defendants' motion is granted, and the Plaintiffs' claims against the Federal Defendants are dismissed.  However, the Plaintiffs shall be granted leave to amend their Complaint to cure the deficiencies detailed in this ruling.  If they fail to do so within the prescribed time, their claims against the Federal Defendants shall be dismissed with prejudice.

Moreover, given the need for the Plaintiffs to cure the deficiencies in the Complaint, the Plaintiffs' Motion for Preliminary Injunction and Declaratory Relief (Doc. 4) is denied without prejudice.  The Plaintiffs may refile this motion after they have submitted an amended complaint and after the Federal Defendants have had an opportunity to make any objections to same.

I.      **Relevant Factual Background**

      **A.  Overview**

Plaintiffs bring this suit for declaratory and injunctive relief related to the award of low-income housing tax credits and other federal funding available under 26 U.S.C. § 42.  They purport to bring this suit under (1) the due process and equal protection clauses of the Fourteenth Amendment; (2) Article 2 Section 1 of the Louisiana Constitution; (3) Louisiana Civil Code article 1967; and (4) Louisiana Civil Code articles 2315 and 2316.  (Doc. 1 at 1.)   In short, the Plaintiffs claim that these tax credits and funds were improperly awarded to two other projects and that, as a result, the Plaintiffs' rights were violated.

Plaintiff Rowan applied for tax credits to finance the development of a subdivision.  The John Doe Plaintiffs are alleged to be individuals in Ouachita Parish who were adversely affected by the purportedly improper award.  Specifically:

-   John Does 1-34 are "the Ouachita Parish people who would have benefited from [a]ffordable housing being provided" (Doc. 1 at 2);

-   John Does 35-40 are "the Ouachita Parish contractors who would have worked on the construction jobs" (Doc. 1 at 3);

-   John Does 41-50 are "the Ouachita Parish local businesses and their owners that did not receive the increase in business from the construction of the affordable housing" (Doc. 1 at 3);  and

-   John Does 51-60 are "the Ouachita Parish citizens . . . who lost the benefit of the increase in sales and property tax revenue the construction of the affordable housing would have created." (Doc. 1 at 3.)

The Federal Defendants provided the funds for the federal program at issue.  The other Defendants in this action are the Louisiana Housing Corporation ("LHC"); Mayson H. Foster, the Chairman of the Board of the LHC; and Frederick Tombar, III, Executive Director of the LHC (collectively, the "State Defendants").  In short, LHC administered the program on the state

level.  Defendants Foster and Tombar were high ranking officers in LHC and allegedly ran it

during all times relevant to this suit.  They have filed a separate motion to dismiss. (Doc. 19.)

### B.  The Low Income Housing Tax Credit Program

An overview of the low income housing tax credit program at issue is helpful in

understanding the allegations of the Complaint.  The Court will thus briefly turn to the legal

framework of the program and then return to the Complaint.

The Louisiana First Circuit Court of Appeal provided such an overview in the recent and

related case of *Rowan Court Subdivision 2013 Limited Partnership v. Louisiana Housing*

*Agency*, 2015-1212 (La. App. 1 Cir. 2/24/16); 2016 WL 759121, *writ denied*, 2016-0591 (La.

5/20/16), 191 So. 3d 1067.  There, the First Circuit explained:

> The LHC was established pursuant to La. R.S. 40:600.86, *et seq.* One of the
> responsibilities of the LHC is to administer Louisiana's portion of the federal Low
> Income Housing Tax Credit Program, enacted under 26 U.S.C.A. § 42 (the
> Internal Revenue Code), which promotes the development of affordable and
> workforce housing by allocating tax credits to developers of affordable housing.
> The tax credits are awarded to affordable housing developers in accordance with a
> detailed application process and criteria set forth in a Qualified Action Plan
> ("QAP"), which is developed each year after a public hearing. After the
> affordable housing developers submit a proposed project based on the QAP, the
> LHC scores the developers' projects and ranks the developers/projects according
> to their scores. The QAP provides a challenge process through which developers
> are allowed to challenge the initial allocation of points, and the developers may
> appeal and have a panel review the LHC decision. Thereafter, the scores are
> finalized, projects are ranked, and top ranking projects are awarded tax credits by
> the LHC Board of Commissioners ("Board"). Tax credits that are either not
> awarded or are subsequently retracted (because of a developer's failure to comply
> with the QAP) are re-allocated to other developers until the QAP for the next year
> is approved, in which case the tax credits are rolled over to the next QAP.

*Id.*, 2016 WL 759121 at *1.

### C.  The Plaintiffs' General Allegations

The Plaintiffs allege that in 2013, LHC issued a request for proposals to developers to

participate in a "competitive 2014 Housing Tax Credit Round, pursuant to HUD and Treasury

3

[r]egulations and constructs." (Doc. 1 at 5.) In connection with this, LHC developed and implemented a selection criteria to be used to score all applications in order to rate them pursuant to the Qualified Application Plan (QAP). (*Id.*)

The Plaintiffs submitted a proposal seeking the tax credits and other funds for its subdivision. (*Id.*) Rowan was given a score of 122. Rowan objected to the score "as being arbitrary and capricious in the way points were allocated [for] its application and other applications," and thus LHC "arbitrarily refused to allocate any additional points to increase the ratings." (*Id.* at 5-6.)

The Plaintiffs further allege they are filing this suit "to prevent the defendants from allocating any remaining 2014, 2015, and/or 2016 Housing Tax Credits and/or Home Funds, CBDG Funds, GAP Funds, and other types of grants before a final resolution of this litigation." (*Id.* at 6.) The Plaintiffs claim that LHC illegally awarded such funds (totaling $20 million dollars) to two projects "which were submitted as being in the City of Richwood, Louisiana, when they were not." (*Id.*) The Plaintiffs seek declaratory and injunctive relief to prevent these funds, credits, and grants from being allocated. (*Id.*)

The Plaintiffs also describe in detail how LHC allegedly miscalculated Rowan's score. (*Id.* at 8-10.) They further maintain that the State Defendants have a "circle of connected developers who work together to freeze out competition." (*Id.*) The Plaintiffs argue that their due process rights to a "hearing before an impartial tribunal with appeal rights" and against "government deprivations of property" have been violated. (*Id.*) They claim that, without an injunction, the State Defendants "will move forward with their plans to award 2013, 2014, 2015, and 2016 tax credit allocations . . . to the 'Chosen Few' developers with lower rankings." (*Id.* at 11.) Concerning the John Doe Plaintiffs, the Plaintiffs state that a failure to enjoin "will result in

a delay and ultimate loss of affordable housing tax credits for the citizens of Ouachita Parish,

denying these U.S. citizens 34 badly needed houses, and ultimately, a roof over their head,

including John Does 1-34." (*Id*. at 11-12.)

In the "Prayer," the Plaintiffs seek, among other things, the following:

-   That Rowan be issued additional points for its 2014 Louisiana Housing Tax Credit submitted to LHC;

-   [a declaration] "[t]hat the failure of [LHC] to provide plaintiffs a fair hearing and adequate notice prior to the taking of tax credit points in making an allocations resulted in a violation of the Due Process Clauses of the United States and Louisiana Constitution[s]";

-   That judgment be rendered in favor of Rowan and against LHC and Tombar enjoining Foster and the LHC Board of Directors from issuing "any further tax credit allocations or and any Home Funds, CBDG Funds, GAP Funds, and any other types of taxpayer funded grants to any projects which were illegally awarded as being located in the City of Richwood until this matter can be finally resolved and enjoined from issuing any of the $20 Million Dollars for projects which were illegally and void ab initio at the time they were awarded";

-   That Rowan be declared to be located in the Parish of Ouachita and that the two awards made by the defendants to the two projects not located in the City of Richwood be declared "absolute nullities" and that "LHC and defendants" be declared to have violated the civil rights of the plaintiffs, including the right to due process and equal protection; and

-   That Defendant pay costs and attorneys' fees.

### D.  The Federal Defendants' Alleged Misconduct

Despite the extensive allegations with respect to the State Defendants, the Plaintiffs

provide limited detail in their Complaint about what the Federal Defendants supposedly did.  In

fact, the sole allegation related to the Federal Defendants is that "HUD and the U.S. Treasury are

vicariously liable for failure to supervise the conduct of the parties contracted with to carry out

their goals." (Doc. 1 at 7.)  As stated above, no prayer is sought against the Federal Defendants.

In their opposition to the instant motion, the Plaintiffs elaborate on their sole allegation as follows:

- "[The Federal Defendants] fail[ed] to properly supervise the administration of a Federal Program, [and] they allowed the [sic] illegal awarding of Housing Tax Credits without due process and in violation of IRS and HUD Regulations. Such supervision would have entailed ensuring that bias or favoritism did not play apart [sic] in awarding this federal money, through requiring a disinterested party evaluate [sic] any applicants [sic] appeal. Thus, had Federal Defendants properly supervised the awarding of federal money, this harm would not have occurred to Rowan, because proper procedures and protections would have been in place and followed. Further, this wrong can still be remedied by this court, [sic] a declaratory judgment from this court will prevent the injury caused to Rowan from repeating itself year after year when tax credits are awarded by the LHC." (Doc. 30 at 3.)

- "[The Federal Defendants] have failed to respond to the claims of fraud and wrongful taking of $20,000,000 of the Taxpayers' money entrusted to their care." (Doc. 30 at 5.)

- "Plaintiffs submit that they have sufficiently [pled] . . . a cause of action for violations of plaintiffs' Constitutional civil rights to Equal Protection and Due Process. The projects that were passed in violation of the HUD Regulations and the Regulations of the U.S. Treasury for awards of $20,000,000 taxpayer dollars [sic]. [The Federal Defendants] are present in this suit because clearly these fraudulent applications are in contravention of the the [sic] two federal defendants' regulations." (Doc. 30 at 8.)

These allegations were not contained in the Petition. Nevertheless, though not properly before the Court, the Court will consider them.

**II.     Relevant Standards**

The Federal Defendants have filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Court will address each standard in turn.

**A.  Rule 12(b)(1) Standard**

Concerning the standard for Rule 12(b)(1) motions, the Fifth Circuit has explained:

6

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996).

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States,* 899 F.Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). . . .

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir.1998).

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B.  Rule 12(b)(6) Standard

In *Johnson v. City of Shelby, Miss.,* —— U.S. ——, 135 S. Ct. 346, 190 L. Ed. 2d 309 (2014), the Supreme Court has explained "Federal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S.Ct. at 346–47 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to inter [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v.*

*Twombly,* 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ]; *Twombly,* 555 [550] U.S. at 556, 127 S. Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand, supra,* nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand,* 565 F.3d at 257; *Twombly,* 555 [550] U.S. at 556, 127 S. Ct. at 1965.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.,* No. 10–00177, 2011 WL 938785, at *3

(W.D. La. Feb. 9, 2011) (citation omitted).

More recently, in *Thompson v. City of Waco, Tex.,* 764 F.3d 500 (5th Cir. 2014), the Fifth

Circuit summarized the standard for a Rule 12(b)(6) motion for dismissal:

We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff ... To survive dismissal, a plaintiff must plead enough facts to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Our task, then, is to determine whether the plaintiff state a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502–03 (citations and internal quotations omitted).

### III.    Summary of Analysis

The Federal Defendants attack the Plaintiffs' claims on three grounds.  First, they argue that the Plaintiffs lack standing; second, that the Plaintiffs have not demonstrated a waiver of sovereign immunity; and third, that the Plaintiffs have failed to state a legally cognizable claim against them.

After considering the briefs and arguments of the parties, the Court dismisses Plaintiffs' claims against the Federal Defendants.  First, the Plaintiffs have failed to demonstrate a waiver of sovereign immunity.  While the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.* ("APA"), provides a waiver for "agency action," the Plaintiffs here have alleged a broad, programmatic challenge to the manner in which the low income housing tax credit plan was run. This type of attack falls outside the definition of "agency action," so there is no waiver of sovereign immunity.

Second, in the alternative, the Plaintiffs have unquestionably failed to state a claim for which relief can be granted.  For this additional reason, their Complaint is dismissed.

Nevertheless, the Court grants the Plaintiffs leave to amend their Complaint to cure the above deficiencies.  However, the Court strongly cautions the Plaintiffs about their obligations under Rule 11.[1]

---

[1] Because the Court dismisses the Plaintiffs' Complaint on the issues of sovereign immunity and failure to state a legally cognizable claim, the Court need not address the Federal Defendants' arguments concerning standing.

## IV.     Sovereign Immunity

"Whether the United States is entitled to sovereign immunity is a question of law[.]" *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014) (quoting *Koehler v. United States*, 153 F.3d 263, 265 (5th Cir. 1998)).  "It is well settled that the United States may not be sued except to the extent that it has consented to suit by statute." *Id.* (citing *Koehler v. United States*, 153 F.3d 263, 265 (5th Cir. 1998)).  Moreover, "[w]here the United States has not consented to suit or the plaintiff has not met the terms of the statute the court lacks jurisdiction and the action must be dismissed." *Id.* (citing *Koehler v. United States*, 153 F.3d 263, 266 (5th Cir. 1998)).

Preliminarily, the Court notes that the Plaintiffs have failed to cite anything in the Complaint that would reflect a waiver of sovereign immunity.  The Plaintiffs refer vaguely to "HUD and Treasury Regulations and constructs," but they do not cite to any specific statute or regulation demonstrating that the United States has waived immunity for a claim involving the alleged failure to properly supervise the state agencies administering the low income housing tax credit program enacted under 26 U.S.C. § 42. On this basis alone, the Complaint should be dismissed.

However, in the Plaintiffs' opposition to the instant motion, the Plaintiffs argue for the first time that the Administrative Procedure Act provides the appropriate waiver of sovereign immunity.  The Plaintiffs contend that the APA waives immunity for suits for declaratory and injunctive relief and that, for these suits, the waiver extends to any suit, whether under the APA or not.

The Federal Defendants respond that the APA's waiver is limited.  The Federal Defendants further argue that their alleged misconduct does not fit within the waiver limitations

of the APA because (1) Plaintiffs do not challenge the failure to perform a discrete agency action which is ministerial or non-discretionary; (2) the Plaintiffs do not challenge an agency action required by law but wrongfully withheld by the Federal Defendants; and (3) Plaintiffs' claims are precluded under the APA because an adequate remedy exists elsewhere.

Section 702 of the APA provides in relevant part, "An action in a court of the United States seeking relief other than money damages and stating a claim that an agency . . . failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States[.]" 5 U.S.C. § 702.[2]  Thus, "Section 702 of the APA 'waives sovereign immunity for actions against federal government agencies, seeking nonmonetary relief, if the agency conduct is otherwise subject to judicial review.' " *Alabama-Coushatta Tribe of Tex.*, 757 F.3d at 488 (citing *Sheehan v. Army & Air Force Exch. Serv.*, 619 F.2d 1132, 1139 (5th Cir. 1980), *rev'd on other grounds*, 456 U.S. 728, 102 S. Ct. 2118, 72 L. Ed. 2d 520 (1982)).  As Plaintiffs correctly argue, the rule in numerous circuits as well as the Fifth is that Section 702 is a waiver of immunity for non-statutory causes of action against federal agencies arising under 28 U.S.C. § 1331. *See id.* (citing *Sheehan*, 619

---

[2] Section 702 provides in full:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.

F.2d at 1139); *see also Rothe Dev. Corp. v. U.S. Dep't of Def.,* 194 F.3d 622, 624 n.2 (5th Cir.

1999) (quoting *Sheehan*, 619 F.2d at 1139, for the proposition that "The 1976 amendment [to

§ 702] waives sovereign immunity for actions against federal government agencies, seeking

nonmonetary relief, if the agency conduct is otherwise subject to judicial review.")).

However, the Federal Defendants are correct that the Fifth Circuit has nonetheless

prescribed limits on the waiver of sovereign immunity contained in Section 702.  Specifically, in

*Alabama-Coushatta Tribe of Texas*, the Fifth Circuit explained:

> Section 702 contains two separate requirements for establishing a waiver of
> sovereign immunity. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 882, 110 S.
> Ct. 3177, 111 L. Ed. 2d 695 (1990). **First, the plaintiff must identify some
> "agency action" affecting him in a specific way, which is the basis of his
> entitlement for judicial review.** *Id***[.]** This "agency action" for the purposes of
> § 702 is set forth by 5 U.S.C. § 551(13) and is defined as "the whole or part of an
> agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or
> failure to act." 5 U.S.C. § 551(13). Second, the plaintiff must show that he has
> "suffered legal wrong because of the challenged agency action, or is adversely
> affected or aggrieved by that action within the meaning of a relevant statute."
> *Lujan,* 497 U.S. at 883, 110 S. Ct. 3177 (internal quotation marks omitted). **These
> requirements apply to any waiver of sovereign immunity pursuant to § 702.**
>
> Section 702 also waives immunity for two distinct types of claims. It waives
> immunity for claims where a "person suffer[s] legal wrong because of agency
> action." 5 U.S.C. § 702. This type of waiver applies when judicial review is
> sought pursuant only to the general provisions of the APA. There must be "final
> agency action" in order for a court to conclude that there was a waiver of
> sovereign immunity pursuant to the first type of waiver in § 702. *Lujan,* 497 U.S.
> at 882, 110 S. Ct. 3177 ("When, as here, review is sought not pursuant to specific
> authorization in the substantive statute, but only under the general review
> provisions of the APA, the 'agency action' in question must be 'final agency
> action.' "). Both *Lujan* and our most applicable case, *Sierra Club,* applied
> specifically to situations where review was sought pursuant only to the general
> provisions of the APA. *See id.; Sierra Club v. Peterson,* 228 F.3d 559, 565 (5th
> Cir. 2000) (en banc).
>
> **Section 702 also waives immunity for claims where a person is "adversely
> affected or aggrieved by agency action within the meaning of a relevant
> statute." 5 U.S.C. § 702. This type of waiver applies when judicial review is
> sought pursuant to a statutory or non-statutory cause of action that arises
> completely apart from the general provisions of the APA.** *See Sheehan,* **619**

**F.2d at 1139;** *Trudeau,* **456 F.3d at 187.** There is no requirement of "finality" for this type of waiver to apply. *See Trudeau,* 456 F.3d at 187. The requirement of "finality" comes from § 704 and has been read into § 702 in cases where review is sought pursuant only to the general provisions of the APA. *See Sierra Club,* 228 F.3d at 565; *Amer. Airlines, Inc. v. Herman,* 176 F.3d 283, 287 (5th Cir.1999). **Instead, for this type of waiver there only needs to be "agency action" as set forth by 5 U.S.C. 551(13).** *See Lujan,* **497 U.S. at 882, 110 S.Ct. 3177.**

757 F.3d at 489 (emphasis added).[3]  Thus, the Fifth Circuit unmistakably requires "agency action," even for non-statutory causes of action arising completely apart from the APA.

Here, Plaintiffs are clearly asserting the second type of claim.  They are alleging a non-statutory cause of action in the form of federal constitutional claims.  (*See* Plaintiffs' opposition, Doc. 30 at 8).  However, under the Fifth Circuit's holding in *Alabama-Coushatta Tribe of Tex.*, they must still allege some sort of "agency action" as defined by 5 U.S.C. § 551(13).

"Failures to act are sometimes remediable under the APA, but not always." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61, 124 S. Ct. 2373, 2378, 159 L. Ed. 2d 137 (2004).

"Failure to act" is "properly understood as a failure to take an *agency action* – that is, a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)." [4] *Id.,*

---

[3] The Court notes that this two-prong framework used in *Alabama-Coushatta* was criticized by the Fifth Circuit in *Belle Co. v. U.S. Army Corps of Engineers*, 761 F.3d 383, 395 (5th Cir. 2014).  However, *Belle* was ultimately vacated by the United States Supreme Court in *Kent Recycling Servs., LLC v. U.S. Army Corps of Eng'rs*, 136 S. Ct. 2427 (2016).  Thus, *Alabama-Coushatta* remains good law. *See also White Oak Realty, LLC v. U.S. Army Corp of Engineers,* No. CV 13-4761, 2016 WL 2348065, at *2 (E.D. La. May 4, 2016) (applying *Alabama-Coushatta*, noting its criticism in *Belle*, and describing the "doctrinal confusion" in the Fifth Circuit on this issue (citation omitted)).

[4] The Supreme Court explained:

> The definition of [agency action] begins with a list of five categories of decisions made or outcomes implemented by an agency-"agency rule, order, license, sanction [or] relief." § 551(13). All of those categories involve circumscribed, discrete agency actions, as their definitions make clear: "an agency statement of ... future effect designed to implement, interpret, or prescribe law or policy" (rule); "a final disposition ... in a matter other than rule making" (order); a "permit ... or other form of permission" (license); a "prohibition ... or ... taking [of] other compulsory or restrictive action" (sanction); or a "grant of money, assistance, license, authority," etc., or "recognition of a claim, right, immunity," etc., or "taking of other action on the application or petition of, and beneficial to, a person" (relief). §§ 551(4), (6), (8), (10), (11).

*Norton*, 542 U.S. at 62, 124 S. Ct. at 2378.

542 U.S. at 62, 124 S. Ct. at 2379.  "The important point is that a 'failure to act' is properly

understood to be limited, as are the other items in § 551(13), to a *discrete* action." *Id.*, 542 U.S.

at 63, 124 S. Ct. at 2379.

The Court finds that the Plaintiffs have failed to allege discrete agency action.  The

Supreme Court has " 'announced a prohibition on programmatic challenges'—challenges that

seek 'wholesale improvement' of an agency's programs by court decree, rather than through

Congress or the agency itself where such changes are normally made.' " *Alabama-Coushatta*

*Tribe of Tex.*, 757 F.3d at 490 (quoting *Sierra Club v. Peterson*, 228 F.3d 559, 566 (5th

Cir.2000) (en banc)).

Thus, in *Alabama-Coushatta Tribe of Texas*, when a tribe sought declaratory and

injunctive relief in connection with the federal Government's alleged failure to protect land and

natural resources subject to the tribe's aboriginal title, the Fifth Circuit found that there was no

jurisdiction over this "impermissible programmatic challenge". *Id.* at 490-91.  The Fifth Circuit

explained:

> **The Tribe's complaint fails to point to any "identifiable action or event."** ***See***
> **[*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899, 110 S. Ct. 3177, 111 L. Ed.**
> **2d 695 (1990)] Instead, the complaint brings a challenge to the federal**
> **management of the natural resources on the land in question.** The complaint
> contends only that all of the leases, permits, and sales administered by multiple
> federal agencies, including any ongoing action by these agencies that encroach on
> the Tribe's aboriginal title, are unlawful. These are allegations of past, ongoing,
> and future harms, seeking "wholesale improvement" and cover actions that have
> yet to occur. *See id.* at 891, 110 S. Ct. 3177. Such allegations do not challenge
> specific "agency action." *See id.*
>
> The Tribe's complaint is structured as a blanket challenge to *all* of the
> Government's actions with respect to *all* permits and leases granted for natural
> resource extraction on a significantly large amount of land covering several
> national parks in Texas. The fact that the Tribe is not seeking wholesale reform of
> every single mineral permit, lease, or sale granted by these agencies but only
> those related to the lands on which the Tribe claims aboriginal title, does not
> diminish the scale of the relief sought by the Tribe. **The challenge is to the way**

**the Government administers these programs and not to a particular and identifiable action taken by the Government.**

**The Tribe argues that the complaint identifies a specific number of these permits and leases that have been issued, but this alone cannot save these claims. As the Tribe concedes, these numbers do not specifically identify the agency action nor is the Tribe contesting these specific actions**. . . .  **Even if the Tribe were to name some specific agency actions as examples of the agencies' alleged wrongdoing, it remains that the challenge is directed at the federal agencies' broad policies and practices—namely the agencies' failure to consider and accommodate the Tribe's aboriginal title and incidental rights.** *See Lujan,* **497 U.S. at 891, 110 S. Ct. 3177 (stating that ordinarily under the APA "the scope of the controversy" should be manageable in proportion and factually developed "by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him");** *Sierra Club,* **228 F.3d at 567 ("[T]he environmental groups [may not] ... challenge an entire program by simply identifying specific allegedly-improper final agency actions within that program . . .").**

*Id.* (emphasis added).

Here, the Plaintiffs have not alleged an agency action because they have not described a

"discrete" failure to act.  Plaintiffs have not alleged a failure to issue a rule, order, license, or

sanction.  Closely examining their complaint and opposition, they have not even alleged a failure

to grant money, recognize a claim or right, or take an action on behalf of a person.   What they

have specifically alleged against the Federal Defendants is a broad programmatic attack: "HUD

and the U.S. Treasury are vicariously liable for failure to supervise the conduct of the parties

contracted with to carry out their goals." (Doc. 1 at 7.)   The Plaintiffs are challenging the way

the Federal Defendants administer the low income housing tax credit program and not any

identifiable, specific inaction taken by them.  Even assuming that the Plaintiffs had identified

"some specific agency [in]actions as examples of the agencies' alleged wrongdoing, it remains

that the challenge is directed at the federal agencies' broad policies and practices." *Alabama-*

*Coushatta Tribe of Tex.*, 757 F.3d at 490-91.  In short, the Plaintiffs are challenging the entire

15

program; indeed, they seek to correct past awards and stop all future awards made under the program until they obtain relief.  For this reason, Plaintiffs' claims are dismissed.[5]

### V.     Rule 12(b)(6) Motion

The parties dedicate little attention to the Rule 12(b)(6) motion; each mostly urges that the Plaintiffs either have or have not stated a claim.

The Court again agrees with the Federal Defendants.  The Plaintiffs have unquestionably failed to state a claim either for due process or equal protection violations.  On this alternative ground, the Court grants the Federal Defendants' motions.

### A.  Due Process

"Procedural due process guarantees do not protect all imaginable private interests affected by government action but only the liberty and property interests encompassed by the fifth amendment." *McCachren v. U.S. Dep't of Agric. Farmers Home Admin*., 599 F.2d 655, 656 (5th Cir. 1979).  As the Federal Defendants correctly explained in their briefs, several courts have analyzed due process challenges involving the federal tax credits at issue, and these Courts have agreed that neither the federal statute creating the tax credit, 26 U.S.C. § 42, nor the relevant state laws create for developers a constitutional entitlement to unawarded tax credits.

---

[5] Because the Court finds that the Plaintiffs have alleged an improper programmatic challenge, the Court need not address the Federal Defendants' additional arguments that the Plaintiffs have an adequate alternative remedy.  The Court also declines to dismiss under the Federal Defendants' remaining argument concerning § 706(1) of the APA, as it is unclear whether the Plaintiffs are bringing a claim under this section.  However, the Court notes that, to the extent the Plaintiffs do seek to bring a claim under this section, they have clearly failed to sufficiently do so.  Section 706(1) allows a claim to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  However, the Supreme Court has held that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton*, 542 U.S. at 64, 124 S Ct. at 2379 (emphasis in original).  "[Section] 706 empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing *how* it shall act." Here, the Plaintiffs have not alleged – either in their Complaint or in their opposition – that the Federal Defendants were *required* to take any action.

*See DeHarder Inv. Corp. v. Ind. Hous. Fin. Auth.*, 909 F. Supp. 606 (S.D. Ind. 1995); *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1 (1st Cir. 2001).

For example, in *DeHarder*, the district court explained that, to have a constitutionally protected property interest, the person must have a "legitimate claim of entitlement to it." 909 F. Supp. at 613 (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972)).  *DeHarder* then explained that Section 42 of the Tax Code did "little more than require states to distribute credits pursuant to a 'qualified allocation plan.' . . . '[O]nce the criteria are considered, no particular outcome necessarily follows." *Id.*  Similarly, "no particular outcome [was] mandated" under the state law at issue. *Id.*  The Court concluded that property interests protected by the Constitution depend on "explicitly mandated language, in connection with the establishment of specified substantive predicates to limit discretion," and, here, "the tax credit allocation scheme envisioned by § 42 and the Indiana Plan appeals to discretion." *Id.* at 614 (citations omitted).   Accordingly, the developers whose tax credit applications had been denied had no protected property interest. *Id.* at 613-14.

Similarly, in *Barrington*, the court affirmed the granting of a motion to dismiss a developer's due process claim.  As in *DeHarder*, the Court found for its due process claim that the Plaintiff had to allege a " 'legitimate claim of *entitlement*' to the supplemental tax credits," and the Plaintiff failed to do so; "[s]ince the Regulations ultimately vest in [the state agency] the absolute discretion to determine whether federal income tax credits are awarded to an applicant, [plaintiff] can lay claim to no cognizable 'property interest' in the 'promised' federal income tax credits." 246 F.3d at 5-6 (emphasis in original).  Relying on *DeHarder*, the *Barrington* court stated, "the federal statute simply mandates that states promulgate their own allocation plans regarding these federal income tax credits, without identifying any particular condition under

which the states are obligated to allocate them." *Id.* at 6.  Given the discretion given to the state

agency in awarding credits, the Plaintiff "never acquired a 'legitimate claim of entitlement' to

supplemental federal income tax credits." *Id.*

Thus, *DeHarder* and *Barrington* demonstrate that developers such as Rowan have no

protected interest in low income housing tax credits.  If developers like Rowan lack such an

interest, then logically individuals like the John Doe Plaintiffs do as well.  For this alternative

reason, the Plaintiffs' due process claims are dismissed for failure to state a legally cognizable

claim.

### B.  Equal Protection

While the Plaintiffs purport to bring their claim under the Fourteenth Amendment, which

applies to state actors, their claims against the Federal Defendant actually arise under the Fifth

Amendment, "which protects parties from unjustifiable discriminatory applications of law" by

the federal government.  *Richard v. Hinson*, 70 F.3d 415, 416-17 (5th Cir. 1995) (citations

omitted).  However, the claims are evaluated under the same standard. *Id.* at 417 (citation

omitted).

In *B.A. v. Mississippi High Sch. Activities Association, Inc.*, 983 F. Supp. 2d 857 (N.D.

Miss. 2013), the district court provided a thorough analysis of the requirements of an equal

protection claim:

> [Equal protection] is essentially a requirement that all persons similarly situated
> should be treated alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432,
> 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). To demonstrate a violation of the
> Equal Protection Clause, a plaintiff must prove that the defendants' actions had a
> discriminatory effect and were motivated by a discriminatory purpose. *Pers.
> Adm'r of Mass. v. Feeney,* 442 U.S. 256, 272–74, 99 S. Ct. 2282, 60 L. Ed. 2d
> 870 (1979); *Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 264–66,
> 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977); *Washington v. Davis,* 426 U.S. 229, 239–
> 42, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976). "Discriminatory purpose . . . implies
> more than intent as volition or intent as awareness of consequences. It implies that

the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of its adverse effects upon an identifiable group." *Feeney,* 442 U.S. at 279, 99 S. Ct. 2282.

If a claim does not involve a suspect class or a fundamental right, courts review [government] action using a rational basis test. *Delahoussaye v. City of New Iberia,* 937 F.2d 144, 149 (5th Cir. 1991). Where . . . the classification created by the regulatory scheme neither trammels fundamental rights or interests nor burdens an inherently suspect class, equal protection analysis requires that the classification be rationally related to a legitimate state interest. *See e.g., Parham v. Hughes,* 441 U.S. 347, 350–53, 99 S. Ct. 1742, 60 L. Ed. 2d 269 (1979); *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976); *Jackson v. Marine Exploration Co.,* 583 F.2d 1336, 1346 (5th Cir. 1978). . . .

Under rational-basis scrutiny, the regulation is "accorded a strong presumption of validity" and "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe,* 509 U.S. 312, 319–20, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993) (quotation marks and citations omitted). Although better alternatives may exist, the [government action] is not required to choose the least restrictive method of achieving its desired ends.

*Id.* at 863–64.

Here, even accepting as true the Plaintiffs' allegations (both in the Complaint and in the opposition), and even construing them in a light most favorable to the Plaintiffs, they have failed to state a claim for an equal protection violation.  Initially, the Plaintiffs have not alleged that the Federal Defendants' actions had a discriminatory effect; again, the Federal Defendants were only legally required to promulgate certain rules. *See* 26 U.S.C. § 42(n).  There is no allegation before the Court that the promulgation of these rules had discriminatory effects.

But putting this aside and assuming that the Plaintiffs had made such allegations, there is no question that there is not a single allegation that the Federal Defendants were "motivated by a discriminatory purpose."  There is nothing indicating that the Federal Defendants "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of its

adverse effects upon an identifiable group." *See Mississippi High Sch.*, 983 F. Supp. 2d at 863

(citing *Feeney,* 442 U.S. at 279, 99 S. Ct. 2282).

Finally, the Plaintiffs have made absolutely no showing that the Federal Defendants'

conduct fails to satisfy a rational basis test.  The Plaintiffs have done nothing to show that there

is no "reasonably conceivable state of facts that could provide a rational basis" for the Federal

Defendants' conduct.

For these reasons, the Plaintiffs have failed to state a claim for an equal protection

violation.  On this alternate ground, the Federal Defendants' motion is granted, and the

Plaintiffs' equal protection claim is dismissed for failure to state a claim upon which relief can be

granted.

## VI.    Leave to Amend

"[A] court ordinarily should not dismiss the complaint except after affording every

opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*,

220 F.2d 480, 482 (5th Cir. 1955).  The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to
> decide cases on the merits rather than on the sufficiency of pleadings, district
> courts often afford plaintiffs at least one opportunity to cure pleading deficiencies
> before dismissing a case, unless it is clear that the defects are incurable or the
> plaintiffs advise the court that they are unwilling or unable to amend in a manner
> that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Relying on *Great Plains* and other cases from this circuit, one district court in Texas articulated

the standard as follows:

> When a complaint fails to state a claim, the court should generally give the
> plaintiff at least one chance to amend before dismissing the action with prejudice
> unless it is clear that the defects in the complaint are incurable. *See Great Plains
> Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir.
> 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.,* 363

F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and
outright refusal to grant leave to amend without a justification . . . is considered an
abuse of discretion.") (internal citation omitted). However, a court may deny
leave to amend a complaint if the court determines that "the proposed change
clearly is frivolous or advances a claim or defense that is legally insufficient on its
face." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
and Procedure § 1487 (2d ed.1990) (footnote omitted); *see also Martin's Herend
Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.,* 195 F.3d 765,
771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a
motion to amend that is frivolous or futile.") (footnote omitted).

*Tow v. Amegy Bank N.A.*, 498 B.R. 757, 765 (S.D. Tex. 2013).  Finally, one leading treatise

explained:

> As the numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally
> is not immediately final or on the merits because the district court normally will
> give the plaintiff leave to file an amended complaint to see if the shortcomings of
> the original document can be corrected. The federal rule policy of deciding cases
> on the basis of the substantive rights involved rather than on technicalities
> requires that the plaintiff be given every opportunity to cure a formal defect in the
> pleading. This is true even when the district judge doubts that the plaintiff will be
> able to overcome the shortcomings in the initial pleading. Thus, the cases make it
> clear that leave to amend the complaint should be refused only if it appears to a
> certainty that the plaintiff cannot state a claim. A district court's refusal to allow
> leave to amend is reviewed for abuse of discretion by the court of appeals. A wise
> judicial practice (and one that is commonly followed) would be to allow at least
> one amendment regardless of how unpromising the initial pleading appears
> because except in unusual circumstances it is unlikely that the district court will
> be able to determine conclusively on the face of a defective pleading whether the
> plaintiff actually can state a claim for relief.

5B Charles A. Wright, Arthur R. Miller, *et al*., *Federal Practice and Procedure* § 1357 (3d ed.

2016).

Here, the Plaintiffs requested at oral argument leave to amend their Complaint to cure

any deficiencies.  The Court will act in accordance with the "wise judicial practice" and general

rule and grant the Plaintiffs' request.

Nevertheless, the Court must warn the Plaintiffs of their obligations under Rule 11 of the

Federal Rules of Civil Procedure.   By submitting an amended complaint to the Court, counsel

for the Plaintiffs is certifying that, to the best of his "knowledge, information, and belief, formed

after an inquiry reasonable under the circumstances[] . . . the claims . . . and other legal contentions are warranted by existing law or by a nonfrivilous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).  The Plaintiffs' initial complaint and opposition to the instant motion came close to this line, and the Court cautions the Plaintiffs against doing so again, particularly after being given this warning.

## VII.   Conclusion

Accordingly,

**IT IS ORDERED** that the Federal Defendants' Motion to Dismiss (Doc. 21) filed by the United States Department of Housing and Urban Development ("HUD") and the United States Department of the Treasury ("Treasury") (collectively, the "Federal Defendants") is **GRANTED;**

**IT IS FURTHER ORDERED** that the claims of Plaintiffs Rowan Court Subdivision 2013 Limited Partnership ("Rowan") and John Does 1-60 against the Federal Defendants are **DISMISSED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that the Plaintiffs shall have twenty-one (21) days from the issuance of the Court's ruling on the State Defendant's Rule 12 Motions to Dismiss and Alternative Relief (Doc. 19) to cure the above-detailed deficiencies in the Complaint.  If the Plaintiffs fail to do so, the claims against the Federal Defendants shall be dismissed with prejudice;

**IT IS FURTHER ORDERED** that, given the need for the Plaintiffs to cure the deficiencies in the Complaint, the Plaintiffs' Motion for Preliminary Injunction and Declaratory Relief (Doc. 4) is **DENIED WITHOUT PREJUDICE.**  Plaintiffs may refile this motion after

they have submitted an amended complaint and after the Federal Defendants have an opportunity

to make any objections to same.

Signed in Baton Rouge, Louisiana, on <u>August 11, 2016</u>.


_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**