# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ROWAN COURT SUBDIVISION 2013
LIMITED PARTNERSHIP, ET AL.

CIVIL ACTION

VERSUS

NO. 15-870-JWD-RLB

THE LOUISIANA HOUSING
COPORATION, ET AL.

## RULING AND ORDER

This matter is before the Court on the Federal Defendants' Motion to Dismiss Amended Complaint, (Doc. 59), filed by the United States Department of Housing and Urban Development ("HUD") and the United States Department of the Treasury ("the Treasury") (collectively, the "Federal Defendants"). Plaintiffs Rowan Court Subdivision 2013 Limited Partnership ("Rowan") and John Does 1-60 (the "John Doe Plaintiffs") (collectively, the "Plaintiffs") oppose the motion. (Doc. 67). The Federal Defendants have also filed a reply in further support of their motion. (Doc. 73). Oral argument is not necessary.

Having carefully considered the law, allegations of Plaintiffs' Amended Complaint, and arguments of the parties, the Federal Defendants' motion is granted, and Plaintiffs' claims against the Federal Defendants are dismissed.

## I.     Relevant Factual Background

### A.  Overview and Procedural History

Plaintiffs bring this suit for relief related to the award of low-income housing tax credits and other federal funding available under 26 U.S.C. § 42. Plaintiffs assert claims under (1) the Due Process and Equal Protection clauses of the Fourteenth Amendment; (2) the Due Process clause of the Fifth Amendment; (3) Article 2, Section 1 of the Louisiana Constitution; and

(4) Louisiana Civil Code articles 1967, 2315, and 2316.  (Doc. 55 at 1).  Plaintiffs claim that various defendants improperly evaluated Rowan's application for tax credits and federal funding related to the development of a housing subdivision and improperly awarded tax credits and funds to two other projects.  The John Doe Plaintiffs are alleged to be individuals in Ouachita Parish who were adversely affected by these actions, specifically:

- John Does 1-34 are "the Ouachita Parish people who would have benefitted from affordable housing being provided" (*Id.* at 2);

- John Does 35-40 are "the Ouachita Parish contractors who would have worked on the construction jobs" (*Id.* at 3);

- John Does 41-50 are "the Ouachita Parish local businesses and their owners that did not receive the increase in business from the construction of the affordable housing" (*Id.*);  and

- John Does 51-60 are "the Ouachita Parish citizens who lost the benefit of the increase in sales and property tax revenue the construction of affordable housing would have created." (*Id.*)

Plaintiffs allege that the Federal Defendants oversee and provide funds for the program at issue in this action.[1]

Plaintiffs' claims were first raised in a Complaint filed in December 2015.  (Doc. 1).  The Federal Defendants moved to dismiss the Complaint, arguing that Plaintiffs lacked Article III standing, Plaintiffs had not established a valid waiver of sovereign immunity, and Plaintiffs' allegations were conclusory and failed to state a claim on which relief could be granted.  (Doc. 21).

---

[1] Both the initial Complaint and operative Amended Complaint also named as Defendants the Louisiana Housing Corporation ("LHC"), and individuals Mayson H. Foster and Frederick A. Tombar, III (collectively, the "State Defendants"), alleging that they were responsible for administering the federal program at the state level.  (Doc. 1 at 1, 3-5; Doc. 55 at 1, 3-5).  In a separate order, the Court dismissed for lack of jurisdiction Plaintiffs' claims against the State Defendants.  (Doc. 77).

On August 11, 2016, the Court granted the Federal Defendants' motion to dismiss, ruling that Plaintiffs had failed to demonstrate that the Federal Defendants waived sovereign immunity and had failed to state a claim on which relief could be granted. (Doc. 48 at 9). The Court did not reach the Federal Defendants' arguments concerning standing. (*Id.*) The Court granted Plaintiffs leave to amend but "strongly caution[ed]" Plaintiffs regarding their obligations under Federal Rule of Civil Procedure ("Rule") 11. (*Id.*). Specifically, the Court opined that original Complaint's allegations "came close to" being impermissible under Rule 11, which states that an attorney filing a complaint certifies that the complaint's claims are warranted by existing law or a nonfrivolous argument to extend, modify, or reverse existing law or create new law. (*See id.* at 9, 22).

The operative Amended Complaint was filed in September 2016.[2] (Doc. 55).

## B. The Low Income Housing Tax Credit Program

In *Rowan Court Subdivision 2013 Limited Partnership v. Louisiana Housing Agency*, 2015-1212 (La. App. 1 Cir. 2/24/16); 2016 WL 759121, *writ denied*, 2016-0591 (La. 5/20/16), 191 So. 3d 1067, the Louisiana First Circuit Court of Appeal provided an overview of the low income housing tax credit program at issue in this case. As the First Circuit explained:

> The LHC was established pursuant to La. R.S. 40:600.86, *et seq.* One of the responsibilities of the LHC is to administer Louisiana's portion of the federal Low Income Housing Tax Credit Program, enacted under 26 U.S.C.A. § 42 (the Internal Revenue Code), which promotes the development of affordable and workforce housing by allocating tax credits to developers of affordable housing. The tax credits are awarded to affordable housing developers in accordance with a detailed application process and criteria set forth in a Qualified [Allocation] Plan ("QAP"), which is developed each year after a public hearing. After the affordable housing developers submit a proposed project based on the QAP, the LHC scores the developers' projects and ranks the developers/projects according to their scores. The QAP provides a challenge process through which developers are allowed to

---

[2] The Amended Complaint purports to "supplement and amend" the initial Complaint. (Doc. 55 at 1). The Amended Complaint appears to be a complete filing in and of itself, and the Court ordered Plaintiffs to file an amended complaint, (see Doc. 48 at 21-23), not a "supplement" to the initial Complaint. In any event, even if the Court were to consider the Amended Complaint as a "supplement" to the initial Complaint, the allegations in both filings taken together would be insufficient to permit this action to proceed.

challenge the initial allocation of points, and the developers may appeal and have a panel review the LHC decision. Thereafter, the scores are finalized, projects are ranked, and top ranking projects are awarded tax credits by the LHC Board of Commissioners ("Board"). Tax credits that are either not awarded or are subsequently retracted (because of a developer's failure to comply with the QAP) are re-allocated to other developers until the QAP for the next year is approved, in which case the tax credits are rolled over to the next QAP.

*Id.*, 2016 WL 759121 at *1.

### C. The Amended Complaint's Allegations

Plaintiffs allege that, in 2013, LHC issued a request for proposals to developers to participate in a "competitive 2014 Housing Tax Credit Round, pursuant to HUD and Treasury regulations and consent." (Doc. 55 at 5). LHC developed and implemented "selection criteria" to be used to score all applications in order to rate them pursuant to a QAP. (*Id.*)

Rowan submitted a proposal seeking tax credits and other funds for its subdivision, and the proposal received a score of 122. (*Id.*) Rowan objected to the score as "incorrect under the selection criteria used to allocate points to its application" and submitted a "10-Day Challenge Letter," which Plaintiffs maintain was in compliance with the protest procedure outlined in the QAP. (*Id.* at 6). In November 2013, Rowan was notified that LHC "refused to allocate the additional points that [Rowan] was entitled to[.]" (*Id.*) Rowan has filed this lawsuit to challenge LHC's "improper denial of the full point value of [Rowan's] application." (*Id.*) Plaintiffs also challenge LHC's reservation of tax credits for two projects that were allegedly based on incorrect and falsified applications. (*Id.*). Specifically, Plaintiffs claim that applications for tax credits related to "Sycamore Point" and "Trinity Estates" projects certified that these projects were located in the City of Richwood but were actually located outside of Richwood. (*Id.* at 7).

With respect to the Federal Defendants, Plaintiffs allege that HUD "failed to enforce its own regulations, which require LHC to reserve tax credits based on the strict point system contained in the HUD[-]approved QAP," which in turn caused Rowan to be denied tax credits it

was entitled to.  (*Id.* at 8).  Plaintiffs purport to seek "an extension of the existing law" that would permit a private citizen to bring suit in federal court to challenge the action or inaction of a federal agency "when its employees have failed to do the jobs for which they were hired."  (*Id.*).  Plaintiffs further allege that applying "requires the applicant [to] agree to abide by the numerous federal statutes enumerated in this application," that federal funds are "in the possession of HUD and awarded by HUD," and that federal tax credits are awarded by HUD after review of an application.  (*Id.* at 9).  Plaintiffs contend that "employees and officers of HUD were negligent in their decision to award . . .  funds to the Trinity [Estates] and Sycamore Point Projects, as they were falsely represented to be in the Town of Richwood, when they were not."  (*Id.*)  Finally, Plaintiffs allege upon information and belief that HUD and the Treasury were negligent and failed to "oversee" that program requirements were followed and federal statutes were complied with in the Trinity Estates and Sycamore Point applications.  (*Id.*)

Plaintiffs claim to seek no damages from the Federal Defendants, but request "a declaratory judgment that the employees of the aforementioned agencies have breached the duty owed to [Plaintiffs] cited hereinafter."  (*Id.* at 4-5).  According to the body of the Amended Complaint, the declaratory judgment sought would also state that "LHC's actions in denying [Rowan's] full due point value and reserving tax credits for the Trinity Estates and Sycamore Point projects was in violation of the QAP rules approved by HUD, and illegal under Louisiana Civil Code Article 7."  (*Id.* at 7-8).

Plaintiffs' prayer for relief asks the Court to "declare" that: (1) the credits reserved for the Trinity Estates and Sycamore Point projects violate unspecified QAP "rules;" (2) Rowan is located in Ouachita Parish; (3) the awards to the Trinity Estates and Sycamore Point projects are "absolute nullities and void ab initio" under Louisiana law; and (4) HUD and certain State Defendants "have

violated the civil rights of [Plaintiffs] by engaging in actions that violated due process and equal protection under the law." (*Id.* at 11-12). Plaintiffs further request that the Trinity Estates and Sycamore Point tax credits be reallocated to "other qualifying projects," or, in the alternative, that Rowan receive damages in the amount of the tax credits that would otherwise have been awarded to Rowan. (*Id.* at 11-12). Plaintiffs in most instances do not specify what relief is sought against each Defendant.

## II.    Relevant Standards

The Federal Defendants move to dismiss the Amended Complaint under Rules 12(b)(1) and 12(b)(6). The Court addresses each standard in turn.

### A. Rule 12(b)(1) Standard

Concerning the standard for Rule 12(b)(1) motions, the Fifth Circuit has explained:

Motions filed under Rule 12(b)(1) . . . allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996).

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States,* 899 F.Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). . . .

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief.

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir.1998).

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B. Rule 12(b)(6) Standard

In *Johnson v. City of Shelby, Miss.,* —— U.S. ——, 135 S. Ct. 346, 190 L. Ed. 2d 309 (2014), the Supreme Court explained that "[f]ederal pleading rules call for a 'short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S.Ct. at 346–47 (citation omitted).

Interpreting Rule 8(a), the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)]; *Twombly,* [550] U.S. at 556, 127 S. Ct. at 1965. This analysis is not substantively different from that set forth in *Lormand, supra,* nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of

law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand,* 565 F.3d at 257; *Twombly,* [550] U.S. at 556, 127 S. Ct. at 1965.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.,* No. 10–00177, 2011 WL 938785, at *3

(W.D. La. Feb. 9, 2011) (citation omitted).

More recently, in *Thompson v. City of Waco, Tex.,* 764 F.3d 500 (5th Cir. 2014), the Fifth

Circuit summarized the standard for a Rule 12(b)(6) motion:

> We accept all well-pleaded facts as true and view all facts in the light most favorable to the plaintiff . . . To survive dismissal, a plaintiff must plead enough facts to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Our task, then, is to determine whether the plaintiff state a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.

*Id.* at 502–03 (citations and internal quotations omitted).

## III.     Summary of Analysis

The Federal Defendants argue principally that the Amended Complaint fails to cure the

deficiencies addressed in the Court's prior ruling.  (Doc. 59-1 at 6).  In the alternative, the Federal

Defendants claim that Plaintiffs continue to lack Article III standing.  (*Id.*).

After considering the arguments of the parties, the Court dismisses Plaintiffs' claims

against the Federal Defendants.  First, the Plaintiffs have failed to demonstrate a waiver of

sovereign immunity.  Plaintiffs seek to invoke the waiver of sovereign immunity provided by the

Administrative Procedure Act, 5 U.S.C. § 500 *et seq.* ("APA").  However, Plaintiffs' claims

constitute an impermissible "programmatic" challenge to the manner in which the low income

housing tax credit program was run and will be run in the future.  Moreover, Plaintiffs challenge

the Federal Defendants' alleged inaction but have not demonstrated that the Federal Defendants

failed to perform an action that they were required to perform.

Second, even assuming that any of Plaintiffs' claims were not barred by sovereign immunity, Plaintiffs have again failed to state a claim for which relief can be granted. For this additional reason, the Amended Complaint is dismissed.

Because Plaintiffs wholly failed to cure the deficiencies addressed in the original Complaint, which was already "close to [the Rule 11(b)(2)] line," and it appears that Plaintiffs are either unable or unwilling to allege facts sufficient to survive a motion to dismiss, granting further leave to amend would be futile. The Amended Complaint is therefore dismissed without further leave to amend.[3]

## IV. Sovereign Immunity

"Whether the United States is entitled to sovereign immunity is a question of law[.]" *Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014) (quoting *Koehler v. United States*, 153 F.3d 263, 265 (5th Cir. 1998)). "It is well settled that the United States may not be sued except to the extent that it has consented to suit by statute." *Id.* (citing *Koehler*, 153 F.3d at 265). Moreover, "[w]here the United States has not consented to suit or the plaintiff has not met the terms of the statute the court lacks jurisdiction and the action must be dismissed." *Id.* (citing *Koehler*, 153 F.3d at 266). A plaintiff bears the burden of showing Congress's unequivocal waiver of sovereign immunity. *St. Tammany Parish, ex rel. Davis v. Federal Emergency Management Agency*, 556 F.3d 307, 315 (5th Cir. 2009).

Preliminarily, the Amended Complaint does not directly address the immunity of the Federal Defendants or cite any statutes or regulations demonstrating that the United States has waived immunity. On this basis alone, Plaintiffs have failed to meet their burden, and the Amended Complaint should be dismissed.

---

[3] Because the Court dismisses the Amended Complaint on the issues of sovereign immunity and failure to state a legally cognizable claim, the Court need not address the Federal Defendants' arguments concerning standing.

In their opposition to the Federal Defendants' motion, Plaintiffs argue that the APA provides the appropriate waiver of sovereign immunity. (Doc. 67 at 3-6). Plaintiffs contend that the APA waives immunity for suits for declaratory and injunctive relief and that, for these suits, the waiver extends to any suit, whether brought directly under the APA or not. (*Id.*) Plaintiffs allege that they challenge HUD's failure to "follow its own regulations when it did not force . . . LHC to recall the tax credits that were awarded in violation of the HUD[-]approved QAP" and do not challenge the "broad methods" HUD uses to reserve tax credits. (*Id.* at 5-6). The Federal Defendants respond that Plaintiffs appear to seek an "enforcement action" against LHC for the use of allegedly false submissions and that these claims are not justiciable under the APA. (Doc. 73 at 2).

Section 702 of the APA provides in relevant part, "[a]n action in a court of the United States seeking relief other than money damages and stating a claim that an agency . . . failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States[.]" 5 U.S.C. § 702.[4] Thus, "Section 702 of the APA waives sovereign immunity for actions against federal government agencies, seeking

---

[4] Section 702 provides in full:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702.

nonmonetary relief, if the agency conduct is otherwise subject to judicial review." *Alabama-Coushatta Tribe of Tex.*, 757 F.3d at 488 (citation omitted). As Plaintiffs correctly argue, the rule in numerous circuits, including the Fifth, is that Section 702 is a waiver of immunity for non-statutory causes of action against federal agencies arising under 28 U.S.C. § 1331. *See id.*; *see also Rothe Dev. Corp. v. U.S. Dep't of Def.,* 194 F.3d 622, 624 n.2 (5th Cir. 1999) ("The 1976 amendment [to § 702] waives sovereign immunity for actions against federal government agencies, seeking nonmonetary relief, if the agency conduct is otherwise subject to judicial review.")).

However, as the Court has previously observed, Section 702's waiver of sovereign immunity is limited. (Doc. 48 at 12-13). In *Alabama-Coushatta Tribe of Texas*, the Fifth Circuit explained:

> Section 702 contains two separate requirements for establishing a waiver of sovereign immunity. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 882, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). **First, the plaintiff must identify some "agency action" affecting him in a specific way, which is the basis of his entitlement for judicial review.** *Id*[**.**] This "agency action" for the purposes of § 702 is set forth by 5 U.S.C. § 551(13) and is defined as "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). **Second, the plaintiff must show that he has "suffered legal wrong because of the challenged agency action, or is adversely affected or aggrieved by that action within the meaning of a relevant statute."** *Lujan***, 497 U.S. at 883, 110 S. Ct. 3177 (internal quotation marks omitted). These requirements apply to any waiver of sovereign immunity pursuant to § 702.**

> Section 702 also waives immunity for two distinct types of claims. It waives immunity for claims where a "person suffer[s] legal wrong because of agency action." 5 U.S.C. § 702. This type of waiver applies when judicial review is sought pursuant only to the general provisions of the APA. There must be "final agency action" in order for a court to conclude that there was a waiver of sovereign immunity pursuant to the first type of waiver in § 702. *Lujan,* 497 U.S. at 882, 110 S. Ct. 3177 ("When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'"). Both *Lujan* and our most applicable case, *Sierra Club,* applied specifically to situations where

review was sought pursuant only to the general provisions of the APA. *See id.; Sierra Club v. Peterson,* 228 F.3d 559, 565 (5th Cir. 2000) (en banc).

> **Section 702 also waives immunity for claims where a person is "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. This type of waiver applies when judicial review is sought pursuant to a statutory or non-statutory cause of action that arises completely apart from the general provisions of the APA. *See Sheehan,* 619 F.2d at 1139; *Trudeau,* 456 F.3d at 187.** There is no requirement of "finality" for this type of waiver to apply. *See Trudeau,* 456 F.3d at 187. The requirement of "finality" comes from § 704 and has been read into § 702 in cases where review is sought pursuant only to the general provisions of the APA. *See Sierra Club,* 228 F.3d at 565; *Amer. Airlines, Inc. v. Herman,* 176 F.3d 283, 287 (5th Cir.1999). **Instead, for this type of waiver there only needs to be "agency action" as set forth by 5 U.S.C. 551(13). *See Lujan,* 497 U.S. at 882, 110 S.Ct. 3177.**

757 F.3d at 489 (emphasis added).[5] Here, Plaintiffs are asserting the second type of claim: each of their federal causes of action is a non-statutory constitutional claim based upon the Federal Defendants' alleged failure to oversee the program at issue. (*See* Doc. 55 at 1, 9).

"Failures to act are sometimes remediable under the APA, but not always." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61, 124 S. Ct. 2373, 2378, 159 L. Ed. 2d 137 (2004). "[F]ailure to act" is "properly understood as a failure to take an *agency action* – that is, a failure to take one of the agency actions (including their equivalents) earlier defined in § 551(13)." [6] 542 U.S. at 62,

---

[5] The Court notes that this two-prong framework used in *Alabama-Coushatta* was criticized by the Fifth Circuit in *Belle Co. v. U.S. Army Corps of Eng'rs*, 761 F.3d 383, 395 (5th Cir. 2014). However, *Belle* was ultimately vacated by the United States Supreme Court in *Kent Recycling Servs., LLC v. U.S. Army Corps of Eng'rs*, 136 S. Ct. 2427 (2016). Thus, *Alabama-Coushatta* remains good law. *See also White Oak Realty, LLC v. U.S. Army Corps of Eng'rs,* No. CV 13-4761, 2016 WL 2348065, at *2 (E.D. La. May 4, 2016) (applying *Alabama-Coushatta*, noting its criticism in *Belle*, and describing the "doctrinal confusion" in the Fifth Circuit on this issue (citation omitted)).

[6] The Supreme Court explained:

> The definition of [agency action] begins with a list of five categories of decisions made or outcomes implemented by an agency-"agency rule, order, license, sanction [or] relief." § 551(13). All of those categories involve circumscribed, discrete agency actions, as their definitions make clear: "an agency statement of ... future effect designed to implement, interpret, or prescribe law or policy" (rule); "a final disposition ... in a matter other than rule making" (order); a "permit ... or other form of permission" (license); a "prohibition ... or ... taking [of] other compulsory or restrictive action" (sanction); or a "grant of money, assistance, license, authority," etc., or "recognition of a claim, right, immunity," etc., or "taking of other action on the application or petition of, and beneficial to, a person" (relief). §§ 551(4), (6), (8), (10), (11).

*Norton*, 542 U.S. at 62, 124 S. Ct. at 2378.

124 S. Ct. at 2379.  "The important point is that a 'failure to act' is properly understood to be limited, as are the other items in § 551(13), to a *discrete* action." 542 U.S. at 63, 124 S. Ct. at 2379.

The Court previously ruled that Plaintiffs had failed to allege a "discrete agency action," but instead made an impermissible "programmatic" challenge to the way the Federal Defendants administer the program at issue in this action.  (Doc. 48 at 14).  In an apparent attempt to comply with the Court's ruling, the Amended Complaint describes as "discrete federal action[s]" the Federal Defendants' failure to "oversee" that statutes and program requirements were followed in the Trinity Estates and Sycamore Point applications.  (Doc. 55 at 9).  Plaintiffs' opposition to the instant motion claims that HUD "failed to follow its own regulations when it did not force [LHC] to recall the tax credits that were awarded in violation of the HUD[-]approved QAP."  (Doc. 67 at 5).

Notwithstanding Plaintiffs' assertions, Plaintiffs' challenges constitute impermissible "programmatic" challenges.  As the Federal Defendants observe, the "day-to-day administration of the federal program, including the actual expenditure of federal funds, is delegated to State and local authorities."  *Dixson v. United States*, 465 U.S. 482, 486, 104 S. Ct. 1172, 1175, 79 L.Ed.2d 458 (1984); *see also* 24 C.F.R. § 570.480(c) (HUD gives "maximum feasible deference" to state interpretation of statutory and regulatory requirements, provided that these interpretations are not "plainly inconsistent with the Act.").  Although Plaintiffs' description of the relief they seek is frequently vague, the scope of the declaratory and injunctive relief sought is broad and appears designed to force the Federal Defendants to modify their supervision of the program at issue so that it complies with Plaintiffs' understanding of what the Constitution requires.  Despite Plaintiffs' assertions that they challenge HUD's failure to follow its own regulations in a few specific instances, Plaintiffs devote little space or attention to this challenge.  Instead, the general

gravamen of the Amended Complaint is a broad, constitutionally-based attack upon the way that HUD administers the program at issue.

Indeed, Plaintiffs' opposition confirms that Plaintiffs seek a declaration that "will prevent the injury caused to Rowan from repeating itself year after year when tax credits are awarded by the LHC." (Doc. 67 at 3). They further claim that the Federal Defendants failed to properly supervise the award of federal funds and credits, particularly by failing protect against "bias or favoritism" by "requiring a disinterested party [to] evaluate any applicants appeal." (Doc. 67 at 2-3). Plaintiffs claim that, had the Federal Defendants "properly supervised" the award of federal funds, harm would not have occurred because "proper procedures and protections would have been in place and followed." (*Id.* at 3).

Therefore, based upon Plaintiffs' description, this action seeks "wholesale improvement" of a HUD program "by court decree, rather than through Congress or the agency itself where such changes are normally made," and it thus constitutes an impermissible "programmatic" challenge. *Alabama-Coushatta Tribe of Tex.*, 757 F.3d at 490 (quoting *Sierra Club v. Peterson*, 228 F.3d 559, 566 (5th Cir. 2000) (en banc)). The fact that Plaintiffs have identified some specific agency actions in support of their claims does not alter this conclusion. *See id.* at 491 ("Even if the Tribe were to name some specific agency actions as examples of the agencies' alleged wrongdoing, it remains that the challenge is directed at the federal agencies' broad policies and practices[.]").

Plaintiffs also assert that they "have clearly alleged facts that show the Federal [D]efendants had a ministerial duty to act and failed to do so." (Doc. 67 at 6). Plaintiffs' assertion appears addressed to the Supreme Court's observation in *Norton* that "the only agency action that can be compelled under the APA is action legally *required*. . . . § 706(1) empowers a court only to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter,

without directing how it shall act." 542 U.S. at 63-64, 124 S. Ct. at 2379 (citations omitted). It is unclear whether Plaintiffs seek to compel the Federal Defendants to take any particular action with respect to the Trinity Estates and Sycamore Point awards. Regardless, the Court disagrees with Plaintiffs' central assertion: Plaintiffs have identified no federal law requiring the Federal Defendants to take any particular action related to their claims. Therefore, if Plaintiffs seek to compel the Federal Defendants to act, their challenge does not arise under the APA such that sovereign immunity is waived.[7]

Plaintiffs bear the burden of demonstrating that sovereign immunity is waived. *St. Tammany Parish, ex rel. Davis*, 556 F.3d at 315. Plaintiffs have failed to demonstrate that their claims are cognizable under the APA, and they have made no other attempts to meet this burden. Therefore, the Federal Defendants are immune from Plaintiffs' claims, and these claims should be dismissed without prejudice. *See Smith v. Booth*, 823 F.2d 94, 98 (5th Cir. 1987) (suit against federal entity was barred by sovereign immunity and district court was required to dismiss claims without prejudice for lack of jurisdiction).

## V.      Rule 12(b)(6) Motion

The Federal Defendants' motion generally asserts that Plaintiffs have not corrected the deficiencies that led to the dismissal of the initial Complaint. (Doc. 59-1 at 10-12). Plaintiffs' opposition reiterates the allegations of the Amended Complaint and emphasizes that Rule 12(b)(6) is a "notice pleading" standard and motions to dismiss under Rule 12(b)(6) are "disfavored" and should be granted only in "extraordinary circumstances." (Doc. 67 at 6-9).

---

[7] Relatedly, Plaintiffs request an "extension of the existing law" to challenge a federal agency's action or inaction when its employees "have failed to do the jobs for which they were hired." (Doc. 55 at 8). The Court denies this request: the APA generally provides relief in such cases already, and Plaintiffs have made no plausible showing that the Federal Defendants or their employees "failed to do the jobs for which they were hired."

The Court again agrees with the Federal Defendants.  Plaintiffs have failed to state a claim either for due process or equal protection violations.[8]  On this alternative ground, the Court grants the Federal Defendants' motion.

## A.  Due Process

"Procedural due process guarantees do not protect all imaginable private interests affected by government action but only the liberty and property interests encompassed by the fifth amendment." *McCachren v. U.S. Dep't of Agric. Farmers Home Admin.*, 599 F.2d 655, 656 (5th Cir. 1979); *Ridgely v. Federal Emergency Management Agency*, 512 F.3d 727, 734 (5th Cir. 2008). As the Court previously observed, several courts have analyzed due process challenges involving the federal tax credits at issue, and these Courts have agreed that neither the federal statute creating the tax credit, 26 U.S.C. § 42, nor the relevant state laws create for developers a constitutional entitlement to unawarded tax credits. (*See* Doc. 48 at 16-18); *DeHarder Inv. Corp. v. Ind. Hous. Fin. Auth.*, 909 F. Supp. 606 (S.D. Ind. 1995); *Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1 (1st Cir. 2001).

For example, in *DeHarder*, the district court explained that, to have a constitutionally protected property interest in something, a person must have a "legitimate claim of entitlement to it." 909 F. Supp. at 613 (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972)).  *DeHarder* then explained that Section 42 of the Tax Code did "little more than require states to distribute credits pursuant to a 'qualified allocation plan.' . . . '[O]nce the criteria are considered, no particular outcome necessarily follows.'"  *Id.*  at 613-14.  Similarly, "no particular outcome [was] mandated" under the state law at issue.  *Id.*  at

---

[8] Because federal law governs the rights of a federal agency, claims under Louisiana law are not cognizable against the Federal Defendants.  *Cf. FDIC v. Lattimore Land Corp.*, 656 F.2d 139, 143 n.6 (5th Cir. 1981) ("This action involves the rights of the FDIC, a federal agency. Federal law governs the determination of the rights of the FDIC.").

614. The court concluded that property interests protected by the Constitution depend on "explicitly mandatory language, in connection with the establishment of specified substantive predicates to limit discretion," and "the tax credit allocation scheme envisioned by § 42 and the Indiana Plan appeals to discretion." *Id.* (citations omitted). Accordingly, the developers whose tax credit applications had been denied had no protected property interest. *Id.*

Similarly, in *Barrington*, the First Circuit Court of Appeals affirmed the granting of a motion to dismiss a developer's due process claim. As in *DeHarder*, the Court found that a plaintiff making a due process claim had to demonstrate a "'legitimate claim of *entitlement*' to the supplemental tax credits," and the plaintiff failed to do so; "[s]ince the Regulations ultimately vest in [the state agency] the absolute discretion to determine whether federal income tax credits are awarded to an applicant, [plaintiff] can lay claim to no cognizable 'property interest' in the 'promised' federal income tax credits." 246 F.3d at 5-6 (emphasis in original). Relying on *DeHarder*, the *Barrington* court stated that "the federal statute simply mandates that states promulgate their own allocation plans regarding these federal income tax credits, without identifying any particular condition under which the states are obligated to allocate them." *Id.* at 6. Due to the discretion given to the state agency in awarding credits, the plaintiff "never acquired a 'legitimate claim of entitlement' to supplemental federal income tax credits." *Id.*

Thus, *DeHarder* and *Barrington* demonstrate that developers like Rowan have no protected interest in low income housing tax credits. If developers like Rowan lack such an interest, then the more attenuated claims made on behalf of the John Doe Plaintiffs must also fail. For this alternative reason, Plaintiffs' due process claims are dismissed for failure to state a claim upon which relief can be granted.

### B. Equal Protection

In *B.A. v. Mississippi High Sch. Activities Association, Inc.*, 983 F. Supp. 2d 857 (N.D. Miss. 2013), the district court provided a thorough analysis of the requirements of an equal protection claim:

> [Equal protection] is essentially a requirement that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). To demonstrate a violation of the Equal Protection Clause, a plaintiff must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose. *Pers. Adm'r of Mass. v. Feeney,* 442 U.S. 256, 272–74, 99 S. Ct. 2282, 60 L. Ed. 2d 870 (1979); *Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 264–66, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977); *Washington v. Davis,* 426 U.S. 229, 239–42, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976). "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of its adverse effects upon an identifiable group." *Feeney,* 442 U.S. at 279, 99 S. Ct. 2282.

> If a claim does not involve a suspect class or a fundamental right, courts review [government] action using a rational basis test. *Delahoussaye v. City of New Iberia,* 937 F.2d 144, 149 (5th Cir. 1991). Where . . . the classification created by the regulatory scheme neither trammels fundamental rights or interests nor burdens an inherently suspect class, equal protection analysis requires that the classification be rationally related to a legitimate state interest. *See e.g., Parham v. Hughes,* 441 U.S. 347, 350–53, 99 S. Ct. 1742, 60 L. Ed. 2d 269 (1979); *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976); *Jackson v. Marine Exploration Co.,* 583 F.2d 1336, 1346 (5th Cir. 1978). . . .

> Under rational-basis scrutiny, the regulation is "accorded a strong presumption of validity" and "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe,* 509 U.S. 312, 319–20, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993) (quotation marks and citations omitted). Although better alternatives may exist, the [government actor] is not required to choose the least restrictive method of achieving its desired ends.

*Id.* at 863–64.

Here, even accepting as true Plaintiffs' allegations and construing them in a light most favorable to Plaintiffs, Plaintiffs have failed to allege an equal protection violation. Initially,

Plaintiffs have not alleged that the Federal Defendants' actions had a discriminatory effect; again, the Federal Defendants were only legally required to promulgate certain rules, *see* 26 U.S.C. § 42(n), and there is no allegation before the Court that the promulgation of these rules had discriminatory effects. Similarly, there is no allegation that the Federal Defendants were "motivated by a discriminatory purpose." There is nothing indicating that the Federal Defendants "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of its adverse effects upon an identifiable group." *See Mississippi High Sch.*, 983 F. Supp. 2d at 863 (citing *Feeney,* 442 U.S. at 279, 99 S. Ct. 2282).

Finally, Plaintiffs have made absolutely no showing that the Federal Defendants' conduct fails to satisfy a rational basis test. Plaintiffs have done nothing to show that there is no "reasonably conceivable state of facts that could provide a rational basis" for the Federal Defendants' conduct. *Id.* at 864.

For these reasons, Plaintiffs have failed to allege an equal protection violation. On this alternate ground, the Federal Defendants' motion is granted, and Plaintiffs' equal protection claim is dismissed for failure to state a claim upon which relief can be granted.

## VI. Leave to Amend

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

Relying on *Great Plains* and other cases from this circuit, one district court in Texas articulated

the standard as follows:

> When a complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend before dismissing the action with prejudice unless it is clear that the defects in the complaint are incurable. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.,* 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion.") (internal citation omitted). However, a court may deny leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (2d ed.1990) (footnote omitted); *see also Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.,* 195 F.3d 765, 771 (5th Cir. 1999) ("A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.") (footnote omitted).

*Tow v. Amegy Bank N.A.*, 498 B.R. 757, 765 (S.D. Tex. 2013). Finally, one leading treatise

explains:

> As [] numerous case[s] . . . make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright, Arthur R. Miller, *et al.*, *Federal Practice and Procedure* § 1357 (3d ed.

2016).

Here, acting in accordance with "wise judicial practice," the Court previously afforded Plaintiffs an opportunity to file an Amended Complaint. (Doc. 48 at 21). The Court cautioned Plaintiffs, however, that their original Complaint "came close to" being impermissible under Rule 11. (*Id.* at 9, 21-22).

After reviewing the Amended Complaint, the Court concludes that granting further leave to amend would be futile. Plaintiffs have repeatedly failed to show that the Federal Defendants have waived their sovereign immunity against Plaintiffs' claims, and the Amended Complaint also comes no closer to plausibly alleging that the Federal Defendants violated Plaintiffs' rights. Because the Amended Complaint is subject to dismissal, and it appears that Plaintiffs are either unwilling or unable to amend in a manner that would avoid dismissal of a future complaint, the Court declines to grant further leave to amend. *See Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (amendment is futile if amended pleading would not survive a Rule 12(b)(6) motion).

## VII.   Conclusion

Accordingly,

**IT IS ORDERED** that the Federal Defendants' Motion to Dismiss (Doc. 59) filed by the United States Department of Housing and Urban Development ("HUD") and the United States Department of the Treasury ("the Treasury") (collectively, the "Federal Defendants") is **GRANTED;** and

**IT IS FURTHER ORDERED** that the claims of Plaintiffs Rowan Court Subdivision 2013 Limited Partnership ("Rowan") and John Does 1-60 against the Federal Defendants are **DISMISSED WITHOUT PREJUDICE** as barred by sovereign immunity. In the alternative, Plaintiffs' claims are **DISMISSED WITH PREJUDICE** for failure to state a claim on which

relief can be granted. Because granting further leave to amend would be futile, dismissal is

**WITHOUT LEAVE TO AMEND**.

Judgment shall be entered accordingly.

Signed in Baton Rouge, Louisiana, on <u>September 12, 2017</u>.


_____
**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**